### PORTER, Price Adm'r, O.P.A., v. AMERICAN TOBACCO CO.

District Court, S. D. New York.

Aug. 19, 1946.

Callman Gottesman, Harry Pfeffer, and Mortimer B. Wolf, all of New York City, for plaintiff.

Chadbourne, Wallace, Parke & Whiteside, of New York City (George W. Whiteside and John A. V. Murphy, both of New York City, of counsel), for defendant.

BRIGHT, District Judge.

Plaintiff moves for partial summary judgment against defendant for $347,607.38, alleged to be the excess over ceiling prices received by defendant on the sale of cigarettes, and to amend his complaint so as to state that amount in the 7th paragraph and treble that amount in the 8th paragraph.

Defendant likewise moves for summary judgment dismissing the complaint, and to strike out paragraphs 6 to 23, inclusive, of the affidavit of Mortimer B. Wolf submitted in support of plaintiff's motion.

The action is brought to recover treble damages for sales and deliveries between December 1, 1943, and July 1, 1944, of cigarettes to wholesalers, jobbers and distributors for· resale to army and navy activities at prices alleged to be in excess of maximum prices established by Revised Price Schedule 62.

Defendant, in its answer, admits that the action arises under the Emergency Price Control Act of 1942, § 1 et seq., as amended, 50 U.S.C.A.Appendix, § 901 et seq., that Schedule 62, at the times mentioned, was in effect, wherein prescribed maximum prices by manufacturers for the sale and delivery of cigarettes are set forth, and that defendant is such a manufacturer. It denies the remaining allegations, and pleads as a defense that if it violated any regulation or price schedule, such violation was not willful nor the result of failure to take practicable precautions against the occurrence.

■ The Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, do not permit the entry of partial judgment in this action as prayed for by plaintiff, who seeks at this time judgment for the alleged excess over ceiling prices, leaving for later determination by trial whether that excess should be trebled or otherwise increased under section 925(e) of the Act. Rule 54(b) permits a partial judgment only "When more than one claim for relief is presented in an action". Rule 56(d) provides that if "judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court * * * shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted"; and "shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial * * * the facts so spec-

ified shall be deemed established, and the trial shall be conducted accordingly."

These rules, in my judgment, preclude the granting of plaintiff's motion for partial judgment. Biggins v. Oltmer Iron Works, 7 Cir., 154 F.2d 214, which is denied. That portion of his motion relating to amendment of his complaint is granted, there being no opposition.

In paragraph 5 of the moving affidavit it is stated that the depositions of Robert B. Walker and A. Leroy Janson cover all material facts. These depositions are the basis of the motions by both parties. They are on file and were submitted to the court. Notwithstanding this, the facts contained in the depositions are summarized in paragraph 6 of the moving affidavit, and in paragraphs 7 to 23, inclusive, is contained plaintiff's argument as to his right to succeed. In paragraphs 19 and 20, reference is made to accounting methods of Philip Morris & Co., to support which are attached two letters from that company.

■ Neither the summarization of the facts nor the argument is proper in an affidavit upon which a motion for summary judgment is based. Rule 56(e) states that "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The affiant did not have personal knowledge of the facts, and was not competent to testify to them, except as stated in paragraph 6 (e), the rule does not require that argument be verified or contained in the affidavit, and the unverified and uncertified letters of Philip Morris & Co. would not be admissible in evidence.

Accordingly those paragraphs objected to except 6 (e) will be stricken out. However, they have been considered by me as part of plaintiff's brief. The practice thus indulged in, however, is improper, and in most instances, as in this, requires additional reading by the court.

The remaining question to be considered is defendant's motion for judgment.

Revised Price Schedule No. 62, relating to cigarettes, so far as material, directs

that, "§ 1358.1 Maximum prices for cigarettes. (a) On and after December 30, 1941, regardless of the terms of any contract of sale or purchase or other commitment, no person manufacturing cigarettes shall sell, offer to sell, deliver or transfer any brand of cigarettes at prices higher than those charged for such brand by said person for a similar quantity to a similar purchaser on December 26, 1941. * * * (b) In the event the Federal Internal Revenue tax on cigarettes should be increased from the existing rate of $3.25 per thousand cigarettes, the amount of such increase may be added to the maximum delivered prices for cigarettes, after the deduction of the trade and cash discounts."

"§ 1358.3 Evasion. The price limitations set forth in Price Schedule No. 62 shall not be evaded whether by direct or indirect methods * * * or by way of any commission, service, transportation or other charge, * * * or by making discounts, premiums or coupons given, or other terms of sale more onerous to the purchaser than those available or in effect on December 26, 1941."

As stated above, the only facts proven are found in the depositions of Robert B. Walker, an assistant to the vice-president of defendant, in charge of sales, and of A. Leroy Janson, manager of defendant's general accounting department.

As I read the papers, plaintiff's claim is based solely on the sale of Lucky Strike cigarettes, for resale to army and navy activities between November 1, 1943, when defendant changed its allowance to its distributors of 3% to $1.25 per case, and July 1, 1944, when defendant reinstated the 3%. That this change in allowance aggregated $347,607.38, the amount for which plaintiff asks partial judgment, is not in dispute, nor are the other facts stated in this paragraph.

The depositions mentioned prove that defendant, during the period in controversy, and for some time before, sold cigarettes direct to the Quartermaster Commissary as well as to jobbers and distributors. The list prices to each were the same, and each was granted a trade discount of 10% and a cash discount of 2%. The jobber and distributor knew the price quoted to the Quartermaster's Commissary. The jobber, usually located near camps of the armed forces, was, if found qualified by defendant, permitted to sell and deliver to the post exchanges, on which sales he was required to make physical deliveries from his own stock, to have suitable warehousing facilities to carry adequate stock to be able to give such camps proper service, and to have salesmen regularly calling on the camps to see that distribution of cigarettes was maintained. If, under these circumstances, the jobber or distributor made such deliveries, and so reported, defendant paid him a service fee of 3% of the net cost of the cigarettes. The distributor bought the cigarettes outright, at the 10 and 2% discounts, the sale by defendant to him being under no condition that he must sell to the camps; there were no conditions as to how or to whom he should resell; he could and did sell to the general tobacco trade. He did sell to the camps at no mark up. Defendant stood the expense of shipment where it delivered the cigarettes to commissaries direct. When deliveries were made by the distributor, defendant paid him the 3% by a separate check.

This arrangement with the jobbers and distributors had been in effect for eight years before the depositions were taken; and was effective on December 26, 1941, the date when cigarette prices were frozen.

The 3% to the distributor amounted to $1.80 per case. On November 1, 1943, defendant reduced this payment to a flat $1.25 per case, and so notified its jobbers. On July 1, 1944, defendant reverted back to the payment of $1.80 and so notified its jobbers and distributors. The difference of fifty-five cents a case is the amount claimed as the over ceiling charge during the eight months in question.

The question is whether the reduction from 3% to $1.25 as of November 1, 1943, violated the regulation prohibiting a sale of cigarettes "at prices higher than those charged for such brand by said person for a similar quantity to a similar purchaser on December 26, 1941"; or was an evasion of the regulation by making the terms of sale "more onerous to the purchaser than those available or in effect on December 26, 1941."

I think the defendant's motion must be denied. It knew that its price to the Commissary and to its distributors and jobbers was the same. It knew also that sales to army and navy activities, whether direct by it or through its distributors, could not be at different prices. To ensure some profit to the distributors, and to avail themselves of their sales activities, deliveries, and the warehousing facilities near the camps, for all of which it would otherwise have had to pay, it reduced the price to its distributors by 3%. The title to the cigarettes passed to the distributors at the time of the sale; they were distributing their own property to the camps. They were not being paid 3% for distributing defendant's cigarettes, which would really have been a service fee. They were selling and delivering the cigarettes to camps at a markup of 3%, which amount they knew defendant would pay, or allow, when assured that they had delivered. For eight years the distributors and jobbers had thus made their profit. The very terms of sale to them had been on that understanding. Where deliveries were made by defendant direct, it stood the expense. When the 3% was reduced to $1.25 the cigarettes cost the distributors and jobbers just that much more; the terms of sale, understood and abided by for eight years, were thus made "more onerous".

The statement is made in paragraph 6 (e) of the plaintiff's moving affidavit, and not denied, that after the Price Administrator had rejected defendant's contention that its reduction of the allowance did not violate Schedule 62, and had announced his intention to file suit, defendant reinstated the 3% allowance. From this, it would seem a fair inference that defendant conceded its culpability.

In compliance with Rule 56 (d) I find that the following material facts exist without substantial controversy:

1. This action arises under the Emergency Price Control Act of 1942, as amended.

2. At all times material, Revised Price Schedule 62, was in full force and effect.

3. At all times material, defendant was a manufacturer of cigarettes, having its principal office and place for transaction of business within the jurisdiction of this court.

4. Between December 1, 1943, and July 1, 1944, defendant sold and delivered Lucky Strike cigarettes to its jobbers and distributors for resale to army and navy activities at fifty-five cents per case of 10,000 in excess of maximum prices established therefor by said Revised Price Schedule 62, all within one year prior to the filing of the complaint.

5. None of the sales mentioned were made for use or consumption other than in the course of trade or business.

6. The aggregate amount by which the consideration in the sales referred to exceeded the maximum price provided by Revised Price Schedule 62 was and is $347,607.38.

Whether or not there should be a recovery by plaintiff against defendant, in an amount greater than that last stated, is actually and in good faith controverted. That question is reserved for trial under paragraph "6" of the defendant's answer.

An order in accordance with this opinion may be settled on notice.